# Griggs *v.* The State.

*Indictment for Larceny by Finding.*

[HEAD NOTES TO OPINION DELIVERED BY MANNING, J.]

1. *Bill of exceptions; evidence set out therein.*—Where certain evidence is set out in the bill of exceptions, but it is not expressly stated that such is all the evidence given, this court cannot hold that the bill of exceptions contains all of the evidence.

2. *Larceny by finding; what constitutes.*—Where one was charged with the larceny of a sack of coffee picked up or found by him in a public road—*held,* that if the defendant feloniously took and carried away the sack of coffee from the public road, knowing when he took it, or having immediate means of ascertaining or finding out, who the owner was, he is guilty of larceny.

3. *Same.*—The finder of an article lost on a highway has a right to it against everybody except the true owner, and may take and carry it away, and a subsequent appropriation of it by him is not larceny, though he may then know the owner; but if he takes it, even from a highway, *animo furandi,* with the intent to steal it at the time of the taking, he is guilty of larceny.

4. *Same; proof of intent to steal.*—Guilt must be proved by evidence showing that the intent to steal accompanied the act of taking, and that the conduct of the accused showed a larcenous character from the beginning, and that, at the time of the finding, he knew, or had then the means of knowing, from marks about the property, or otherwise, who was the owner.

5. *Same; finding in a highway distinguished from finding under other circumstances.*—A distinction is made between cases of finding an article dropped in a *highway,* or other place in which it is manifestly *lost,* and a place in which it is unintentionally left or dropped by the owner—for, if there be no such evidence indicating to the finder, at the time of the taking of the chattel, to whom it belonged—if he did not otherwise know it—the law presumes the taking was innocent and lawful.

6. *Charges; when properly refused—proof sufficient to convict.*—Where the defendant asked charges founded on the idea that to make the defendant guilty of larceny "he must, at the time of taking the sack of coffee, have known who the owner was; *or,* there must have been *marks upon it,* by which he could then be known," *held* that such charges state the principle—in the second condition—too narrowly, and are, therefore, properly refused. The defendant may be found guilty—other things being sufficiently proved—if he has the present means of knowing who the owner is, or if, when he takes the goods into his hands, he sees about them any marks, or otherwise learns any facts, by which he knows who the owner is.

[HEAD NOTES TO OPINION DELIVERED BY BRICKELL, C. J.]*

1. *Larceny by finding; duty of finder.*—If the finder of lost goods knows the owner, or, from the facts and circumstances attending the finding, or, from

---

*(NOTE BY REPORTER.—The judges all concurred in affirming the judgment of conviction; but Judges BRICKELL and STONE did not concur in the reasoning employed, or, in the principles of law stated by Judge MANNING, so far as they are variant from the opinion delivered by BRICKELL, C. J.)

[Griggs v. The State.]

his previous acquaintance with the goods, or, from marks or other *indicia* on them, he has the immediate means of ascertaining the owner, it is his duty, legal and moral, to restore them to the rightful owner, and not to appropriate them absolutely to his own use, for if he does so appropriate them he is guilty of larceny.

2. *Place of finding; material to what extent.*—The place of finding is material only in determining whether the goods are *lost*, or *mislaid*, or *left by mistake* of the owner under circumstances which would enable him to return for them.

3. *Taking goods mislaid or left by mistake; when larceny.*—The taker of goods mislaid or left by mistake, is guilty of larceny by an appropriation or conversion of them to his own use, whether the intent to steal was formed at the time of, or subsequent to the taking.

4. *Larceny committed in any place; character of taking; when not changed.*—Larceny may be committed in any place, public or private, in a highway or in the dwelling of the owner; and the approved definition of larceny as given by Mr. East, (2 East, P. C. 553) is applicable as well to goods lost as to any other, and the place where the goods are found is immaterial, because such definition extends to the taking and carrying away of goods "from any place." The owner is not, by the loss at any place, divested of the right of property, which right draws to it constructively the right of possession.

5. *Trespass as an ingredient; distinction between taking by finding and by trespass.*—The finder of lost goods does not commit a trespass in taking possession of them; there is no violation of the owner's right of property nor invasion of his possession. Larceny generally includes a trespass, but every trespass is not larceny, and whether it amounts to larceny depends upon the intent at the time, or on the subsequent conversion. If possession is obtained by a trespass it is not material whether the *animo furandi* then existed or was subsequently formed, while if possession be obtained by finding, the intention to steal must exist at the time of the finding.

6. *Felonious intent must co-exist with the finding; question for the jury.*—If, at the time of the finding, the felonious intent does not exist, though there may be a subsequent concealment of the goods, or a denial of all knowledge of them and a fraudulent appropriation of them, it is not larceny. Whether the criminal intent co-existed with the finding is a question for the jury, to be ascertained by a careful examination of the facts and circumstances attending and immediately following the finding.

APPEAL from the City Court of Eufaula.

Tried before the Hon. ALPHEUS BAKER.

Defendant, Anderson Griggs, was indicted for stealing a sack of coffee, the personal property of one Calvin W. Fenn—the indictment being framed in the usual way. Trial was had on the plea of "not guilty," and defendant was convicted and (the offense being grand larceny) was sentenced to imprisonment in the penitentiary for three years.

On the trial, the State introduced one Jim James, as a witness, who testified, that some time in the fall of 1877, he was carrying some goods, the property of said Fenn, on a wagon, from Eufaula to Clayton, in Barbour county, among which goods was a sack of coffee—the property alleged to have been stolen; that after he had gotten about two miles from Eufaula he jumped out of the wagon and adjusted the load, and noticed the said sack of coffee in the wagon; that after driving another mile, and, while ascending a hill, he discovered that said sack of coffee was missing; that he drove up the hill and called to one Sam Tullis, who was

driving another wagon, and told Tullis to stop, that he (James) had lost a sack of coffee; that he then took out one of his mules and rode back on the public road to look for his coffee, and after riding several hundred yards he came to defendant's wagon, standing near a gate that led by a private road into the woods from the public road, which private road led to defendant's house. He saw defendant standing in the edge of the woods some distance from the public road, and defendant seemed to be peeping at him; that he called defendant down to the public road and asked him if he had seen anything of a sack of coffee that he (witness) had lost from his wagon; that defendant said he had seen nothing of it; that witness, Tullis, and defendant, then looked for the coffee along the public road and in the woods near by, but could not find it; that he (witness) then told defendant that no one had passed along the road but him (defendant), and that he (defendant) must know where the coffee is; that he (witness) then noticed some red dirt (like that of the public road) on defendant's shoulder, which caused him to smell of defendant's shoulder, and he detected the odor of coffee; that defendant said he did not have the coffee, and had not seen it, and further said that he had been pretty much in sight of witness' wagon all the way from Eufaula, until he (defendant) turned out to go to Reeves' gin-house after cotton seed, and that he had come from town with a Mr. William Harrison; that his wagon had cotton seed in it; that he stopped his wagon at the gate and went up into the woods to look for lightwood, and let his wagon stand in the public road because if he turned his steers in the gate they would go home. Witness further testified that the road to Reeves' gin-house was between Eufaula and the Barbour bridge, and about half a mile from the bridge; that he had not seen defendant after leaving Eufaula; that defendant was not in sight of witness' wagon, nor did witness ever see the defendant until the coffee was lost; that he did not see any one after crossing the Barbour bridge until he discovered that his coffee was missing; nor had any one passed him, going the other way.

Sam Tullis, as a witness for the State, corroborated the testimony of Jim James.

The State then introduced said Calvin W. Fenn, who stated that the coffee lost was his property, and was worth about thirty-four dollars, and that Jim James was hauling said coffee, with other goods, along the public road, from Eufaula to Clayton.

William Harrison, being sworn by the State, testified that having heard of the loss of the sack of coffee, he started out

to hunt for it; that it was found about fifty yards beyond the gate through which defendant had to go, and that defendant was not obliged in going home to pass by the place where the coffee was; that defendant did not come from Eufaula with witness, and that witness did not see defendant that day; that the coffee was found just over the fence by the big road, lying by some bushes, though not concealed; that if the coffee had been in the road opposite the place where found, it could have been seen from where defendant's wagon was standing.

The above is, substantially, all of the evidence which is set out in the bill of exceptions.

The court charged the jury as follows: "The defendant is indicted for grand larceny, and if you believe beyond all reasonable doubt that the defendant feloniously took and carried away from the public road in Barbour county the sack of coffee as charged in the indictment, and that it was the property of Calvin W. Fenn, and over the value of twenty-five dollars, and that defendant knew when he took it who the owner was, *or if he did not know but had immediate means of ascertaining or finding out who the owner was*, then he is guilty as charged. But if you believe that, though defendant took the coffee, that at the time of the taking he did not intend to steal it, then you must find him not guilty."

Defendant excepted to that portion of the above charge which is in italics.

Defendant then asked the following written charges: 1. "If the jury believe from the evidence that if at the time defendant found the sack of coffee in the highway he did not know who the owner was, he is not guilty."

2. "Before the jury can convict, they must be satisfied from the evidence that the defendant feloniously took and carried away the sack of coffee from the highway where it was dropped, and that at the time he so took it and carried it away, he knew who the owner was, or that there were marks upon it by which the owner could be known; and if both these facts are not proved beyond all reasonable doubt, the jury must acquit."

3. "If the jury believe from the evidence that the defendant found the sack of coffee on the highway and took it up and put it over the fence, and at that time did not know the owner, and that no marks were on it by which the owner could be known, and that afterwards he did find out who the owner was, but failed to show where the sack of coffee was, the jury must find the defendant not guilty."

4. "Unless the jury believe from the evidence, beyond all reasonable doubt, that at the time defendant took up the

[Griggs v. The State.]

sack of coffee and put it over the fence (if the jury believe he did so take it) that he, the defendant, did not know the owner, and that no marks were upon it by which the owner could be known, they must find the defendant not guilty."

The court refused each of said charges, and defendant's counsel reserved exceptions.

The giving of the charge by the court, and the refusal of the charges asked by defendant, are now assigned as error.

G. L. Comer, for appellant.—The court erred in charging the jury that they could convict the defendant whether he knew who was the owner of the sack of coffee ,or not, if he had immediate means of ascertaining who the owner was, and in refusing the charges asked by appellant.—2 Bish. Cr. L. § 841–860; *People v. Cogdell*, 1 Hill (N. Y.) 94; *People v. Anderson*, 14 Johnson, 294; *Reg. v. Dix*, 36 Eng. L. & Eq. 597; *State v. Conway*, 18 Mo. 597; *Randall v. The State*, 4 S. & M. (Miss.); *Murray v. The State*, 18 Ala. 727.

John W. A. Sanford, Attorney-General, *contra.*—The court did not err in its charge.—*People v. McGarsen*, 17 Wend. 460; *State v. Pratt*, 20 Iowa, 267.

MANNING, J.—1. Appellant was indicted for the larceny of a sack of coffee. It had dropped from a wagon-load of goods while being hauled from Eufaula to Clayton, about twenty miles distant, along a highway in Barbour county, and was not long afterwards, on the same day, found, between three and four miles from Eufaula, just over a fence by the highway, and near some bushes, about fifty yards beyond a gate at which defendant's ox-wagon was standing, and through which he had to pass on his way home with his wagon. Some circumstances were proved tending to show defendant had put the sack where it was found; but he denied that he had seen it or knew anything about it. It was proved that he said he had been "pretty much in sight" of the wagon from which it was dropped, from Eufaula for about a mile or more, where he had turned off to a gin-house to get some cotton-seed, which he had in his wagon; but the driver of the other wagon, who had, after this, seen the sack of coffee in it, testified that he "had not seen defendant since he left Eufaula, that he was not in sight of witness' wagon, nor did witness ever see or hear defendant, or his wagon, until after the coffee was lost." There is no evidence in the record that there was any mark on the sack of coffee, or other *indicium*, by which the owner could be known, or any other evidence than that mentioned above, that defendant

knew who the owner was. But it is not expressly said in the bill of exceptions, that it contains all the evidence given, and, therefore, we cannot, according to the decisions of this court, hold that it does.

2. There is no error in the charge that was given by the judge to the jury. If the defendant feloniously took and carried away the sack of coffee from the public road, and knew when he took it who the owner was, or had immediate means of ascertaining or finding out who the owner was, then he was guilty of larceny thereof. It seems to have been formerly held in England, and is still, or lately, was held in one or two of the States of this Union, that the finder of an inanimate chattel that was really lost could not be found guilty of stealing it. "Lord COKE lays down the law as drawn from the year books, (3 Inst. 107) to be, that if one lose his goods and another find them, though he convert them, *animo furandi*, to his own use, yet it is no larceny." So, "in 2 East's P. C. 663, it is expressly stated that where one finds a purse in the highway, which he takes and carries away, it is no felony, although it may be attended with all those circumstances which usually prove a felonious intent, such as denying and secreting it." In the *People v. Anderson* (14 Johns. R. 296) from which the foregoing extracts are taken, the defendant was indicted for stealing a trunk, which (it was believed) had fallen from a stage-coach on the highway and been found by him. The court below instructed the jury that if he took the trunk with intent to steal it, they ought to find him guilty; and that in determining that question, they had a right to take into consideration the prisoner's subsequent conduct as well as all the circumstances in the case. The Supreme Court of New York reversed the judgment, and said: "The *bona fide* finder of a lost article, or of a lost trunk containing goods, cannot be guilty of larceny by any subsequent act of his in concealing or appropriating to his own use, the article or the contents of a trunk thus found. . . . There can be no trespass in taking a chattel found in the highway, and the finder has a right to keep the possession against every one but the true owner. How, then, can it be that a thing found *bona fide*, and of which the finder has a right to take possession, shall be deemed to be taken feloniously, in consequence of a subsequent conversion, by denying and secreting it with an intention to appropriate it to the use of the finder." See, also, *The People v. Cogsdale*, 1 Hill, 46 ; *Lawrence v. The State*, 1 Humph. 228 ; *Porter v. The State*, Mart. & Yerg. 226. By the words *bona fide* in the passage above, the court meant *really, truly*—that is, if the trunk had not been taken from the stage coach, but had *truly*

dropped from it in the public road, and been there *really* found by the prisoner.

3. The idea was, that the finder of an article lost on a highway, has a right to it against every body else than the true owner, and may take it and carry it away. And if he subsequently appropriates it to his own use, he does not thereby subject himself to punishment as a thief, although he may know, when he does so, who the owner is. This is in law a conversion only, very dishonest, it is true, but not larceny. The prevailing doctrine, though, is that if he take it even from a highway, *animo furandi*, with the intent to steal it, and this intent exists when he takes it, he is in law guilty of larceny.

4. But how shall a jury know whether or not the intent to steal existed at the time of the taking? The law, in its humanity, requires them to presume any one on trial before them to be innocent. The guilt of the accused must be proved; and it must be proved by evidence showing that the intent to steal accompanied the act of taking, and stamped a larcenous character on his conduct from the beginning. If, at the time of finding it, he does not know, or have the immediate means of knowing whose it is, evidence of a hiding of the article or of a disposing of it, afterwards, though only a very short time afterwards, is evidence of the intent then existing, in a mind that, perhaps, has just yielded to and been overcome by the temptation produced by possession and a reluctance to surrender what had not been dishonestly obtained. But such misconduct, especially after the owner is known, is, in the apprehension of those who have had proper moral training, so little better than larceny, that upon proof of it, a jury would generally be inclined to convict. And yet the defendant might, consistently with all such evidence, have had no intention to steal the article when he found it. The law, therefore, requires that it be further shown that defendant, when he found the article, knew who the owner of it was, or had then and there the means of knowing whose it was. Says Mr. Bishop (in the 6th ed. of his Commentaries on Criminal Law): "A man knowing the owner of goods cannot lawfully pick them up without returning them to him; but a man not knowing the owner can. The doctrine, therefore, is, that if, when one takes goods into his hands he sees about them any marks, or otherwise learns any facts, by which he knows who the owner is, yet with felonious intent appropriates them to his own use, he is guilty of larceny, otherwise not. Some of the cases say if he knows who the owner is *or has the means* of ascertaining; but the better doctrine is, as before set down, because every

man, by advertising and inquiry, can find the owner, if he is to be found, while the guilt of the defendant must attach at the moment, if ever."—2 Vol. § 882. The doctrine above laid down is that ǀof thecase of *Regina v. Thurbourn*, 1 Denn. C. C. 387; (2 Leading Crim. Cases, 18) in which Baron PARKE delivered a long and well considered opinion. A like conclusion was reached in *Tanner's case*, (14 Grattan), by the Court of Appeals of Virginia, after a thorough examination of the cases, including those mentioned in the elaborate note to *Regina v. Preston*, 2 Lead. Crim. Cases, 31. "We have seen," says ALLEN, president of the court, "from the authorities, that where there are no *indicia*, by which the owner can be found, the appropriation to the finder's use does not amount to larceny; for, as it has been held, the finder of a chattel actually lost, is not bound to take any means to discover the owner. He must know him immediately from marks about the property or otherwise." And in a case like the present, it cannot be held that he is bound to wait by the lost goods to see whether the owner' will not return for them. Peradventure, the person from whose wagon this sack of coffee dropped, might not have discovered the loss of it till his arrival at Clayton. In *Commonwealth v. Titus*, ǀ16 Mass. 42), the Supreme Judicial Court of Massachusetts recognized a like doctrine, namely, that it should be shown that, when the article was found, it was taken by the finder, *animo furandi*, and also that he then knew or had reasonable means of knowing or ascertaining who the owner was. Said GRAY, C. J.: "The instruction given did not require the jury to be satisfied merely that the defendant might have reasonably ascertained it, but that at the time of the original taking, he either knew or had reasonable means of knowing or ascertaining who the owner was. Such a finding would clearly imply that he had such means within his own knowledge, as well as within his own possession, or reach, at that time."

5. A distinction is made by the courts, between cases in which an article is dropped in a highway, or other place in which it is manifestly lost, and those in which it is intentionally left or dropped by the owner in other places—as on a table in a barber's shop, or in a garden of the owner, or in the prisoner's store, or by a departing guest at his hotel. Speaking of such, PARKE, Baron, said: "Perhaps these cases might be classed amongst those in which the taker is not justified in concluding that the goods were lost, because there is little doubt he must have believed that the owner would know where to find them again, and he had no pretence to consider them abandoned or derelict."—*Regina v.*

[Griggs v. The State.]

*Thurbor, supra.* But where the goods are found in a highway, (as is said in the note to *Regina v. Preston*, 2 Leading Crim. Cases, p. 34), "if there are no marks upon the property or other *indicia*, by which the owner can be found, the appropriation to the finder's use does not amount to larceny, although he knew the property was not his own." See, also, *Lane v. The People*, 5 Gillman, Ill. 305, in which it is said: "These authorities proceed on the principle that there cannot be a felonious intent in taking a chattel from the highway, which has no marks about it to designate the owner, the finder in such case having the right to take and retain the possession against every one but the owner." Perhaps it would be more correct to say, that, without some such evidence indicating to the finder at the time of the taking of the chattel, whose it was, if he did not otherwise know it, the law presumes that he took it, innocently and lawfully, because he might do so. By departing from this rule we should obliterate a well defined boundary, on one side, of the crime of larceny. It is wrong in policy and in law to substitute vague ideas in the place of a clear criterion, to juries that have to consider the evidence in such cases. And if we resolve to do so, it seems to me, that to be consistent, we ought to go yet further, and disregarding precedents, decide that the finder of a lost chattel shall be held to be a bailee of it for the owner, and like a hirer, who knows the owner of the property he is getting, and by his own act procures it from him, must be held to have obtained it in the first instance with a felonious intent, if he afterwards appropriates it to his own use. But the hirer, in such a case, not only converts the chattel to his own use, but perfidiously breaks the plighted faith implied in the contract of bailment, that he will return it; for which reason he may well be supposed to have gotten it with a felonious intent.

6. The charges asked for defendant, and refused, all are founded on the idea, that to make the defendant guilty of larceny, either he must at the time of taking the sack of coffee, have known who the owner was, or that there must have been *marks upon it* by which he could then be known. The second condition is too narrowly expressed. The defendant, according to the rule laid down, may be found guilty—other things being sufficiently proved—if he has the present means of knowing who the owner is, "by marks on the goods, or *otherwise*," or, according to Bishop, if, when he takes the goods into his hands, he "sees about them any marks, or *otherwise learns any facts*, by which he knows who the owner is." It is thus implied that such knowledge may be obtained otherwise than by marks only on the goods.

[Griggs v. The State.]

Consequently there was no error in refusing those charges. Let the judgment of the City Court be affirmed.

BRICKELL, C. J.—1. It seems at one time to have been a generally received opinion that lost goods were not under any circumstances the subject of larceny. Whether a careful and just examination of the older authorities would support the opinion, is not now matter of importance. If it ever prevailed, it must have been admitted with the limitation expressed by Lord Hale, who says: "This taking of *treasure-trove,* waif, or stray, must be when the party that takes them, really believes them to be such, and colours not a felonious taking under such a pretense, for then every felon would cover his felony with that pretense."—1 Hale, Pleas of the Crown, 506; 2 Russ. Crimes, 12. The doctrine has been repudiated in England, and it never found the least countenance, so far as we can discover, in but two cases in this country, the one in Tennessee, (*Porter v. The State,* M. & Yerg. 226,) and the other in New York, (*People v. Anderson,* 14 Johns. 293). The decision in Tennessee rests on the reasoning that as a trespass is not committed in taking goods lost they are not the subject of larceny. The same reasoning has led the same court to the anomalous ruling, that if goods are fraudulently obtained under a pretense of hiring, but with the intent of stealing, and selling them, there can be no larceny, as there was no trespass committed in obtaining possession.—*Felter v. State,* 9 Yerg. 297. The New York case was decided by a divided court, (THOMPSON, C. J., dissenting), and has not been approved by other courts. *Tanner v. Commonwealth,* 14 Gratt. 635; *Ransom v. State,* 22 Conn. 153. It is said of this case, in *People v. Swan,* 1 Park. Cr. Rep., by WILLARD, J., that the particular facts are not detailed, but it is assumed that the owner had lost the goods, and that the defendant was an honest finder. And in *People v. McGarren,* 17 Wend. 463, it is said of it, that it did not appear that the defendant knew, or had the means of knowing, who was the owner of the property. There can be no other ground on which the case can be supported. The finder can not be honest, if he knew, or from the facts and circumstances attending the finding, or from his previous acquaintance with the goods, or from marks or other indicia on them, he has the immediate means of ascertaining the owner. It is then his duty, legal and moral, not to appropriate them absolutely to his own use, or to convert them, but to restore them to the rightful owner. This seems to us unquestionably the doctrine in England, since the case of *Regina v. Thurbourn,* 1 Den. C. C. 387, in which PARKE, B.,

[Griggs v. The State.]

after referring to the older authorities, says : "It appears, however, that goods which do fall within the category of lost goods, and which the taker justly believes to have been lost, may be taken out and converted so as to constitute the crime of larceny, when the party finding may be presumed to know the owner, or there is any mark upon them presumably known by him, by which the owner can be ascertained." In the conclusion of his opinion, it is said : "The result of these authorities is, that the rule of law on this subject seems to be, that if a man find goods that have been actually lost, and appropriates them, with intent to take the entire dominion over them, really believing when he takes them that the owner can not be found, it is not larceny. But if he takes them with the like intent, though lost or reasonably supposed to be lost, but reasonably believing that the owner can be found, it is larceny." Later English cases, while not agreeing with some of the reasoning, and some of the principles stated by the learned Baron, have fully recognized the doctrine that lost property is the subject of larceny. In *Regina v. Christopher*, Bell, C. C. 22, referred to in 2 Heard's Lead. Cr. Cases, 424, it is said by HILL, J., that "two things must be made out in order to establish a charge of larceny against the finder of a lost article. First, it must be shown that, at the time of finding, he had the felonious intent to appropriate the thing to his own use ; and this is founded on the rule laid down by Lord COKE, and referred to and acted upon in *Regina v. Thurbourn*. The other ingredient necessary is, that at the time of the finding he had reasonable ground for believing that the owner might be discovered, and that reasonable belief may be the result of a previous knowledge, or may arise from the nature of the chattel found, or from there being some name or mark upon it, but it is not sufficient that the finder may think that by taking pains the owner may be found ; there must be the *immediate* means of finding him."

2. Before and since these decisions, the courts of this country have made no other distinction between goods lost, and those in any other situation, than that, at the time of the finding the intent to steal must exist, and the finder must know, or have the reasonable means of knowing or ascertaining the owner.—3 Green. Ev. § 159, and authorities referred to in the notes ; 2 Heard Lead. Cr. Cases, 423–432.; 2 Bish. Cr. Law. §§ 878–883 ; *Commonwealth v. Titus*, 116 Mass. 42. The place of finding is material only in determining whether the goods fall in the category of lost goods, or of goods merely mislaid, or put down and left by mistake of the owner, under circumstances which enable him to know where

[Griggs v. The State.]

they were, and at a place to which he would naturally return for them.—*Lawrence v. State*, 1 Hum. 228; *Pritchett v. State*, 2 Sneed, 285; *Pyland v. State*, 4 Sneed, 357; *State v. Brick*, 2 Harrington, 530; *People v. McGarren*, 17 Wend. 460; *Regina v. Kerr*, 8 Carr. & Payne, 176; *Regina v. Peters*, 1 Carr. & Kir. 245; *Cartwright v. Cartwright*, 8 Vesey, 406; *Merry v. Green*, 7 Mees. & Wels. 623.

3.   The taker of goods mislaid, or left by mistake, is guilty of larceny by an appropriation or conversion of them to his own use, whether the intent to steal was formed at the time of or subsequent to the taking.

4.   Larceny may be committed in any place, public or private, in a highway, or in the dwelling of the owner.   In *Ransom v. State*, 22 Conn. 156, the court quotes, with approbation, the definition of larceny, as given in 2 East, P. C. 553, which Professor Greenleaf says, is the most approved definition: "The wrongful or fraudulent taking and carrying away, by any person, of the mere personal goods of another, from any place, with a felonious intent to convert them to his (the taker's) own use, and make them his own property, without the consent of the owner."—3 Green. Ev. § 150.   The court proceed to say, each branch of this definition is strictly, and according to the meaning which has been uniformly attached to it by judicial construction, applicable as well to goods lost, as to any other."   And further, the court say: "It is certainly not impossible, from the nature of the case, for a person who discovers the goods of another which have been lost in a highway, or any other place, to form a fraudulent intention to appropriate them to his own use, and to take them with that intention.   The place where they are found is immaterial, as it respects the offense of larceny, because the definition of it extends to the taking and carrying away of goods "from any place."   There is nothing in the circumstance, that they were there, because they were accidentally lost, which any more precludes the possibility of forming such a fraudulent intention, than if they had been placed there designedly by the owner.   This is so far from being true, that the very fact, that they were apparently thus lost, and that their location is therefore unknown to the owner as well as others, and also that he is unknown, or the loss undiscovered, may and often does constitute a motive, on the part of the finder, arising from the difficulty of detection, and hope of impunity, which induces him to take possession of the property, and convert it to his own use."   Nor does the finder acquire any other or greater right, nor are his duties in any respect changed, because the goods are lost and found in a highway.   He may lawfully take possession of them,

[Griggs v. The State.]

when they are lost, wherever they may be found. And when found, his duty is to keep them for the owner. The owner is not by the loss at any place divested of the right of property, and that right draws to it constructively the possession. The finder, it is true, may retain them against all the world but the owner. So may every other possessor of personal property retain it, however tortiously, or criminally, the possession was obtained, against all but the owner, or some person connecting himself with the title of the owner. 1 Chit. Pl. 170; 1 Waterman on Trespass, 507; *Tarry v. Brown*, 34 Ala. 159.

5. The finder of lost goods does not commit a trespass in taking possession of them—he does merely a lawful act, though he may know the owner or have the immediate means of ascertaining him. There is no violation of the owner's right of property, nor invasion of his possession. Larceny generally includes a trespass; yet every trespass is not larceny. Whether it is larceny, depends on the intent at the time of its commission, or on the subsequent fraudulent appropriation and conversion of the goods. If possession is obtained by a trespass, it is not material whether the *animo furandi* then existed, or was subsequently formed. *Commonwealth v. White*, 11 Cush. 483; *State v. Coombs*, 55 Maine, 477. A distinction arises between the taking of lost goods, and a taking by a trespass—the intention to steal must exist at the time of the finding—no subsequent formation of that intention will convert the taking into a felony, though the owner be known.—2 Heard's Lead. Cr. Cases, 425.

6. If at the time of the finding the felonious intent did not exist, though there may be a subsequent concealment of the goods, or a denial of all knowledge of them, and a fraudulent appropriation of them, the offense is not larceny. Whether the criminal intent coexisted with the finding, is a question for the jury. It may be a question of difficulty, but it is to be ascertained by the jury just as the intent with which any act is done is ascertained—by a careful examination of the facts and circumstances attending and immediately following the finding. We quote again from the case of *Ransom v. State*, *supra*, "for the purpose of showing such intention, inquiries as to his" (the finder's) "conduct, and all the circumstances preceding, accompanying, or following such taking, so far as they are relevant, are, as in all other cases of a similar accusation, admissible; and when the goods were obtained by finding, it is from the nature of the case, very important to ascertain, whether the accused knew, or had the means of knowing, the owner, or endeavored to discover him, or made known or concealed his acquisition;

and, generally, how he conducted with the goods, in order to determine whether he intended originally to convert them to his own use, or to restore them to the owner: No arbitrary or artificial importance or effect is attached to these circumstances, when they are disclosed by the evidence; they are only evidential of the intention of the accused, and, as such, to be weighed by the jury."

We all concur in affirming the judgment of conviction; but a majority of the court do not concur in the reasoning employed, or in the principles of law stated by our brother MANNING, so far as they are variant from this opinion.