## FRANK ROBINSON *v.* THE STATE.

1. THEFT.— Where a proprietor has sold certain goods to be delivered hereafter, and in order to separate them from bulk pending delivery, places them in a trunk, and his agent, without knowledge of its contents, subsequently sells and delivers the trunk to a third party, who, equally ignorant of the contents, receives the trunk, takes it home and finds the goods, the *status* of the goods is that of lost property, and the relation of the purchaser of the trunk to the contents is that of finder of lost or mislaid property. See the opinion on the question.

2. SAME.— LOST PROPERTY, like any other, may be the subject of theft.

3. SAME — CRIMINAL INTENT — CASE STATED.— M., a merchant, sold two coats and a vest to be delivered hereafter, and for keeping placed the articles in a trunk in his store. A day or two subsequently his clerk sold the trunk to the defendant, neither of them examining it, and both ignorant of its contents. The defendant took the trunk home and there discovered its contents, which he did not return, but retained. On the trial, it was insisted for the defense, that, in order to convict for the theft of the coats and vest, the intent to appropriate them must have existed at the time the trunk was delivered and received. But *held*, that if the criminal intent was formed at the time of the discovery of the goods, their appropriation was theft. See the opinion *in extenso* on the question.

4. SAME — CHARGE OF THE COURT.— See the opinion for a charge of the court applicable to the principle, and for charges properly refused as repugnant thereto.

APPEAL from the District Court of Parker. Tried below before the Hon. A. J. HOOD.

The opinion fully states the case. The punishment imposed by the verdict was confinement for two years in the State penitentiary.

No brief for the appellant has reached the Reporters.

*H. Chilton,* Assistant Attorney General, for the State.

WHITE, P. J.   A. L. Morris, who was a dry goods merchant at Weatherford in Parker county, sold to two parties living in the country a coat and vest to one, and a coat to the other.   These parties were to call, pay for, and get the articles in a few days.   Meantime he placed the articles for keeping in a trunk in his store.   One of his clerks sold this trunk a day or so afterwards to defendant, and neither he nor defendant examined the trunk at the time, nor did they know of its contents, but both supposed it to be empty.

Defendant bought and paid for nothing but the trunk. He carried it home and there became apprised of its contents, but did not return the coats and vest, but shortly afterwards when he moved from Parker to Johnson county, he carried the trunk and clothing with him. Morris, when he became aware of the loss of the goods, sent a deputy sheriff to Johnson county for them.   Defendant at first denied to the officer that he had the articles, but subsequently, when the officer told him he was satisfied he did have them and that he might have trouble if he did not give them up, he said that rather than have any trouble he would give them up, and then went and got them and delivered them to the officer.

On the trial of defendant for the theft of the goods, the following, amongst other requested instructions asked in his behalf by his counsel, were refused by the court, viz.:  "If the jury are satisfied from the evidence in this case that the property came into defendant's possession lawfully, and that at the time it so came into his possession he had no intent to steal the same, then the jury must find the defendant not guilty under the indictment."
. . .   "If the jury are satisfied from the evidence that, at the time the defendant bought the trunk from Mor-

ris's clerk as detailed by the witnesses, that the coats and vest named in the indictment were in the trunk and delivered to defendant, and by him carried away, he the defendant not knowing that the coats and vest were in the trunk until after he arrived at home with them, this would not be such a taking as to make it theft. To constitute theft there must be an unlawful intent at the time of the taking."

In lieu of these instructions the charge of the court as given declared the law in the following language, viz.: "If the defendant purchased and conveyed away the trunk, the said coats and vests being therein, and he the defendant at the time knew the goods were in the trunk, and he the defendant at the time further knew that the owner was ignorant of the fact that the goods were in the trunk, and such taking of the goods and trunk was, as far as the goods were concerned, without the consent of the owner and from his possession, and such taking of the goods was done with the intent to deprive the owner of the value of the same and appropriate the goods to his, defendant's, own use and benefit, then in law such taking would be a fraudulent taking. Again: if defendant bought and paid for the trunk, and neither he nor the seller knew at the time that said goods, to wit, said coat and vest, were in fact in the trunk, and if in a short time after carrying the trunk away the defendant found the goods in the trunk, and at the time, knowing the owner of the goods, formed in his mind the intention of fraudulently keeping and not restoring the goods, and if he, defendant, did under these circumstances, knowing the owner, retain the goods with intent to steal, then in such case in law defendant's taking would be a fraudulent one, and, if proven guilty of the theft in every other respect, cannot lawfully claim an acquittal on the ground that the taking was a lawful one."

Our Penal Code, in defining the legal meaning of the "taking" necessary and essential to constitute the crime

of theft, declares that "the taking must be wrongful, so that, if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft." Penal Code, art. 727. Appellant's counsel, in the refused instructions, has sought to apply the terms of this provision literally to the case at bar. The idea conveyed is that if the trunk came lawfully into the possession of accused, all its contents came equally into his possession lawfully, and he could not be guilty of theft by a subsequent appropriation of them. This is not in fact true. The owner, or rather his clerk, whilst selling and delivering the trunk never intended to convey and did not convey either the title or possession of its contents; for he was wholly ignorant of its contents. So was defendant, when he purchased and became possessed of the trunk. The goods, so far as these parties were concerned, were lost, because they neither knew anything of their existence or their whereabouts. When defendant opened, examined and came across them in the trunk, they were in every sense lost goods which he found; as much so as if he had come across them upon the public highway or any other place where the owner had dropped, mislaid, left them by mistake, or lost them. The *status* of the case is precisely that of the finding of lost or mislaid goods, and the law governing such a finding is the law applicable to the facts of this case. There can be no serious question, either in reason or law, why lost or mislaid goods may not be the subjects of theft. It has, we are aware, been held otherwise in two cases, one in Tennessee [*Porter* v. *State*, M. & Yerg. 226], and one in New York [*People* v. *Anderson*, 14 Johns. 293], the ground assumed being that, as a trespass is not committed in taking lost goods, they are not the subject of larceny. But elsewhere both in England and America the contrary doctrine is everywhere firmly settled and established.

Mr. Bishop says: "The law gives to the finder a title

in lost goods, but not full and unconditional; and so if he takes them with the intent to steal them he commits a larceny, unless this consequence is prevented by the operation of the principles now to be mentioned. A man knowing the owner of goods cannot lawfully pick them up, without returning them to him, but a man not knowing the owner can. The doctrine, therefore, is that if, when one takes goods into his hands, he sees about them any marks, or otherwise learns any facts, by which he learns who the owner is, yet with felonious intent appropriates them to his own use, he is guilty of larceny; otherwise not. Some of the cases say if he knows who the owner is or *has the means of ascertaining;* but the better doctrine is as above set down, because every man by advertising and inquiring can find the owner if he is to be found, while the guilt of the defendant must attach at the moment, if ever, without depending on an if." 2 Bish. Cr. L. (8th ed.) § 882.

The only distinction made between theft of lost goods and theft of other property seems now to be that at the time of the finding "the intent to steal must exist, and the finder must know or have the reasonable means of knowing or ascertaining the owner." 3 Greenl. Evid. § 159; 2 Hard's Lead. Crim. Cas. 423–432; 2 Arch. Cr. Pl. and Pr. 388–395; *Reed* v. *State,* 8 Texas Ct. App. 40.

The doctrine in no wise contravenes the provision of our statute that the thing stolen must be taken from the possession of the owner or some one holding the same for him [P. C. art. 724]; because the owner of lost property is not divested of his right of property in it by the loss, and that right draws to it constructively the possession wherever found. "The owner of goods need not keep a constant manual possession of them to be protected in his rights of ownership. And though he forget the place in which he laid them, or though for any other reason he knows not where they are, still they remain his." 2 Bish.

Cr. Law, § 878.   See also a very able and learned discussion of the whole subject in *Griggs* v. *State*, 58 Ala. 425..

But suppose in the case before us, with reference to the owner's rights, the goods should be treated rather as mislaid than lost goods, the rules so far as the taker is concerned are the same, and the taking would be theft.   *Id.* sec. 879.

But let us consider the subject of fraudulent intent; which is the gist of the offense of theft under our statute.   It is said that this intent must exist at the time of the taking, and that no subsequent felonious taking will render the previous taking felonious.   *Billiard* v. *State*, 30 Texas, 367; *Johnson* v. *State*, 1 Texas Ct. App. 118. As we have seen, defendant did not know that the goods were in the trunk when the trunk was taken; consequently his taking of the goods at the time he took the trunk was, so far as they were concerned, an involuntary act.   With regard to them at the time of taking, he did not and could not have entertained any intention at all. His intentions so far as they were concerned could only be called into exercise and have had being when he found or discovered them in the trunk, and his criminality must attach at that time if at all, since it was impossible that a fraudulent intent could have been entertained previously.   If the fraudulent intent and taking did not occur then, no subsequent felonious taking would constitute the crime.

"If at the time of the finding (which was when he discovered the articles in the trunk), the felonious intent did not exist, though there may be a subsequent concealment of the goods or a denial of all knowledge of them, and a fraudulent appropriation of them, the offense is not larceny.   Whether the criminal intent coëxisted with the finding is a question for the jury.   It may be a question of difficulty, but it is to be ascertained by the jury just as the intent with which any act done is ascertained,—

by a careful examination of the facts and circumstances attending and immediately following the finding. We quote from the case of *Ransom* v. *State*, 22 Conn. 156, as follows: "For the purpose of showing such intention, inquiries as to his, the finder's, conduct and all the circumstances preceding, accompanying or following such taking, so far as they are relevant, are, as in all other cases of similar accusation, admissible; and when the goods were obtained by finding, it is from the nature of the case very important to ascertain whether the accused knew or had the means of knowing the owner, or endeavored to discover him, or made known or concealed his acquisition; and generally how he conducted with the goods in order to determine whether he intended originally to convert them to his own use or to restore them to the owner. No arbitrary or artificial importance or effect is attached to these circumstances when they are disclosed by the evidence; they are only evidential of the intention of the accused, and as such to be weighed by the jury." See also *Griggs* v. *State*, 58 Ala. 425.

When the charge of the court as above quoted is subjected to the tests of the principles of law which we have discussed, we think it will be found to be substantially correct, and in the main entirely harmonious with them. On the other hand, it must be equally as apparent that the refused instructions did not embody correct principles of law. The court did not err in the charge as given, nor in the refusal of the requested instructions asked in behalf of defendant. Other questions are raised but the errors complained of are not deemed tenable.

We find no such error in the record as requires a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*