# Johnson v. The State.

*Larceny.*

(Decided February 11, 1915.  Rehearing denied April 6, 1915.
68 South. 687.)

*Evidence; Accomplice; Corroboration.*—Where an accomplice testified to the theft of the animals, and a sale of them to a third person, and the defendant, when told that the accomplice had stated that defendant had sold the animals to a third person, offered to pay the third person for the animals if he said that defendant had sold him the animals, and such third person and defendant went to see the accomplice, who stated that he and defendant had taken another animal and defendant then offered to pay in case such person said that he had sold the animal, and the accomplice refused to go, and defendant then said he would go alone, there was a sufficient corroboration of the accomplice to sustain a conviction under section 7897, Code 1907.

(Thomas, J., dissents.)

13—13

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

William Johnson was convicted of larceny, and he appeals. Affirmed.

WARREN S. REESE, W. H. & J. R. THOMAS, and J. LAMAR WILEY, for appellant.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

THOMAS, J.—The defendant, William Johnson, was charged with the larceny of "two heifers, animals of the cow kind, the personal property of Lula Rogers."

Lula Rogers, the alleged owner of the two heifers charged to have been stolen, testified as a witness for the state that she knew the defendant, William Johnson; that he lived on Mr. Mason's place, in Montgomery county, Ala.; that in February, 1914, she lost two heifers, not described, which she has never recovered; that the last time she saw them they were on defendant's premises; that she had a talk with him about the heifers when she went afterwards to look for them; and that he said he not seen them. The state then introduced as a witness Ed Ledyard, who testified: "That he had a bull yearling—not described—that was on Lula Rogers' [the last-mentioned witness] premises when she lost her cows in February, 1914; that his and Lula's were running together; that he never got back his after it was put in the pasture; and that it was missed the same time that Lula's was."

This evidence of these two witnesses was clearly insufficient to prove even the corpus delicti; since, for aught appearing, the heifers had not been stolen, but had merely strayed or wandered from home, and had not

been found or recovered.—*Jeffries v. State,* 7 Ala. App.
144, 62 South. 270; *Sanders v. State,* 167 Ala. 85, 52
South. 417, 28 L. R. A. (N. S.) 536; *Thomas v. State,*
109 Ala. 25, 19 South. 403; *Orr v. State,* 107 Ala. 35, 18
South. 142; *Griggs v. State,* 58 Ala. 425, 29 Am. Rep.
762. The most that can be said of it is that it shows that,
if Lula Rogers' heifers were, as was alleged, stolen, the
defendant had an opportunity of doing it.

These two witnesses, Ed Ledyard and Lula Rogers,
also testified, each, as to a conversation had between
the witness Ed and the defendant, Johnson, when they
(Ed and Lula) were looking for the lost cows, each tes-
tifying, in substance, in this particular that Ed said
to defendant that Shep Bargainer had told him (Ed)
that defendant had taken the heifers and sold them to
Aaron Manning, and that defendant replied, "Let's go
over to Manning's, and if he says I sold them to him,
I will pay for them," whereupon Ed said, "There is no
use to go to see him, because Manning has already told
me you sold him the heifers," and that defendant then
said, "We will go to see him, and if he tells me so, I
will pay for them." Ed further testified that he (Ed)
refused to go with defendant to see Manning, unless
Shep Bargainer (the person who told him that defend-
ant had sold the cows to Manning) would also go; that
he and defendant thereupon went to see Bargainer, and
Bargainer refused to go, but that Bargainer then stated
in the presence of defendant that he (Bargainer) and
defendant had taken the cows and the bull yearling,
whereupon defendant said, "If I have taken the bull
yearling, I am also willing to pay for it, but you come
go with me to Manning;" that, when Bargainer would
not go, defendant offered to go with witness to Man-
ning, and, upon witness declining, defendant proceeded

by himself. Defendant never paid for the cows, and a warrant was sued out for him and Bargainer. The latter pleaded guilty.

What Bargainer may have said to witness and defendant or what Manning may have said to witness, which was repeated to defendant, is no evidence of the truth of the matters stated by them, but is pure hearsay so far as concerns the commission of the crime and the guilt or innocence of defendant, and was admissible solely to show what defendant said and did when these statements charging him with crime were made or repeated to him. His words and conduct in the face of the charge are the only original evidence, so far as the testimony of the witnesses mentioned is concerned, against him. Can what he said and did, as testified to by them, be construed as a confession of the crime by him, or as in the nature of a confession? We think not, for the reasons hereinafter considered; but, even if they could, the law is that a person cannot be convicted on his confession, unless, independent of the confession, the evidence is sufficient to authorize a conclusion beyond a reasonable doubt that the offense has been committed; in other words, unless the corpus delicti has been made out by other evidence than the confession.—*Harden v. State,* 109 Ala. 50, 19 South. 494. Certainly, as seen, there is so far no such evidence; it only appearing that the heifers were missing from the pasture, and not that they had been stolen.—Authorities, supra.

The only other witness introduced by the state was Shep Bargainer, who confessed the crime, pleaded guilty under a separate indictment to stealing the heifers, and on this trial implicated the defendant as an accomplice. He testified that defendant came to his house and asked him to go down to his (defendant's) house and help him

[Johnson v. The State.]

deliver some cows which he (defendant) had sold Aaron Manning; that, in pursuance of the request, witness went down to defendant's house, where he and defendant, after killing and dressing one cow, caught and tied another behind a wagon and drove the wagon, leading the cow to Aaron Manning's store, where defendant sold it to Manning; that both cows were taken from defendant's lot; and that this was done about two hours before sunup.

The evidence for defendant tended to show that Bargainer and another sold Manning a yearling, leading it to him behind a wagon, as stated by him, but that defendant had nothing to do with it.

It has always been considered dangerous to convict of a heinous crime on the uncorroborated evidence of an accomplice; and, emphasizing the sentiment, our statute (Code, § 1897) declares that: "A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense, or the circumstances thereof, is not sufficient."—Code, § 1897.

There is not a line of evidence, as seen, outside of the testimony of the self-confessed participant in the crime, tending to connect the defendant with its commission, except the bare fact, as before pointed out, that defendant had an opportunity of doing so, because the heifers had been seen at one time running out on his premises, and had not been seen since, which is not sufficient (*Jeffries v. State*, 7 Ala. App. 144, 62 South. 270), and except the further fact that defendant stated, when accused of selling them, that if the person (Manning) who, it was claimed, had said that defendant had sold him

the heifers, would tell him (defendant) so he (defendant) would pay for them, and that defendant offered to face his accusers in the presence of the witness who was opposed in interest, and did in such presence go to and face one of them (his alleged self-confessed accomplice, Bargainer), and demanded, after Bargainer had incriminated defendant as having, in connection with him, sold the property to Manning, that Bargainer and witness each go with him (defendant) to see Manning, stating that if Manning would verify the charge he (defendant) would pay for the property.

Of course, if what defendant said and did may, as a matter of law, be construed into a confession of the crime, then it is a sufficient corroboration of the accomplice to warrant a submission of the case to the jury. —*Snoddy v. State,* 75 Ala. 23. While silence or a failure to deny guilt when one is accused of crime is ordinarily regarded as the equivalent of an express confession, yet the defendant was not silent; and what he said and did under the circumstances is, it seems to us, as much open to a construction that he meant to deny guilt as it is that he meant to admit it. We are aware that the ways of the guilty are devious and are often past finding out, and we know that guilt quite frequently, in an effort to conceal itself, assumes an air of boldness, and, with a show of innocence, demands, without denying the charge, to face its accusers; yet we also know that real innocence is inherently bold, and that a consciousness of it makes one feel it unnecessary to affirm that innocence, but rather to invite and welcome a facing of his accusers in the supreme confidence that such will result in a more prompt and satisfactory acquittance and removal of the stain of the accusation. It is a matter of common knowledge that per-

sons unjustly accused of wrongdoing quite often make no other answer to the aggrieved party, who reported the accusation, than to say that the accuser would not tell them so, and then offer to go and see him. Guilt likewise, we know, has also often resorted to this same role. Was it guilt or innocence, then, that actuated the words and conduct of the defendant? Those words and conduct do not themselves inform us, for they are, as seen, as consistent with innocence as they are with guilt. They, in and of themselves, are consequently ambiguous, and constitute as much of a denial as they do of an admission of the crime. Being susceptible of two constructions, they must, in the opinion of the writer, be, for purposes here, given the construction most favorable to the defendant; and therefore he is of opinion that they alone are not, as a matter of law, even if the testimony as to them be believed, sufficient, as a corroboration of the accomplice, in connecting defendant with the commission of the crime, to authorize the submission to the jury of the question of defendant's guilt, and that, since there was in evidence no other fact or circumstance than these to corroborate the accomplice, the court should have given the general affirmative charge requested by the defendant.—*Lindsey v. State,* 170 Ala. 80, 54 South. 516.

The other members of the court do not agree with the writer as to the insufficiency in law of the alleged confessions, but are of opinion that, if the testimony as to such confessions be believed (which, of course, was a question for the jury), they are a sufficient corroboration of the accomplice to justify defendant's conviction, if the accomplice be also believed, and, consequently, they are of opinion that the court did not err in refusing the affirmative charge requested by defendant.

They entertain the view that the said statements or alleged confessions attributed to defendant were of such a disserving character that from them an inference might be fairly drawn to his prejudice; and they rely for that view on the principles stated as follows, in Jones on Evidence, § 236, p. 300, as to what constitutes a confession, to wit: "That the statement or act should be self-disserving or of such a character that from it some inference may be fairly drawn to the party's prejudice."

And they are of the opinion that the case of *Snoddy v. State, supra,* sustains their application of the principle.

The writer concedes that it was entirely proper to admit in evidence said statements, but, unless followed up by other evidence tending to corroborate the accomplice as to defendant's connection with the crime, in the light of which his ambiguous statements might be construed adversely to him, it is the writer's opinion that they were not sufficient to authorize a submission of the case to the jury. If they had been followed up by other corroborating evidence, then, I concede, it would have been for the jury, and not the court, to construe the ambiguous statements of defendant and give them incriminating weight or not, as they thought proper. As the matter is, it seems to the writer that defendant's conviction is rested alone upon the testimony of the accomplice, as without that defendant's alleged statements have no incriminating character whatever.

The evidence for the state was perhaps also deficient in failing to show that the two head of cattle belonging to Lula Rogers, which Bargainer swore he and defendant had stolen, were the two heifers alleged to have been lost. Even though the cattle stolen were, as Bar-

[Harkey v. The State.]

gainer stated, the property of Lula Rogers, and even though the defendant participated with him in stealing such cattle, yet, unless both head, or one of them at least, were heifers, as that term is understood in law, the defendant could not be convicted under the present indictment on account of a variance between allegation and proof, in the event the point of variance was properly raised in the court below.—*Parker v. State,* 39 Ala. 365; *Marsh v. State,* 3 Ala. App. 80, 57 South. 387; *Tombigbee R. R. Co. v. Wilks,* 6 Ala. App. 474, 60 South. 559; *Watson v. State,* 55 Ala. 150. It does not appear, however, to have been properly raised. See rule 35 of the new circuit court rules adopted by the Supreme Court, as published on the frontispiece of 175 Ala. xxi.

We find no reversible error in the record, and the judgment appealed from is affirmed.

Affirmed.