COMMONWEALTH *vs.* SAMUEL F. MASON.

Taking a horse found astray upon the taker's land, with intent to conceal it until its owner shall offer a reward for its return, and then to return it and claim the reward, or with intent to induce the owner to sell it astray for less than its value, is larceny.

On the trial of an indictment for larceny, the defendant proposed to ask a witness for the Commonwealth, in cross-examination, whether he had not forged the defendant's name to a note, and whether he had not offered to suborn a witness in another case; but the judge excluded the questions, on the objection of the attorney for the Commonwealth, although it did not appear that the witness was unwilling to answer them. *Held*, that the defendant had no ground of exception.

On the trial of an indictment for larceny of a horse, there was evidence tending to show that the defendant took and concealed the horse, and a few days afterwards its owner sold it astray, to J. S., for less than its value; that, soon after the sale, the defendant, in company with J. S., attended an auction, where he told a third person that J. S. had bought the horse cheap, would take it home that night, and did not know how the defendant came by it; and that J. S. ascertained where the horse was, and did take it home that night. *Held*, that the defendant had no ground of exception to the submission to the jury, on this evidence, of the question whether J. S. and the defendant were acting in concert.

INDICTMENT for larceny of a horse owned by Joseph H. Davenport, at Sterling. Trial, and verdict of guilty, in the superior court, before *Devens*, J., who allowed the following bill of exceptions:

" There was evidence of a certain conversation, about the first of October 1867, with the defendant, tending to show that he complained that Davenport's horse had been in the habit of trespassing upon his mowing in Sterling, and that Davenport had misused him about some waterworks ; that he intended to take the horse and conceal it, in the belief that Davenport would offer a reward, and then to return the horse and claim the reward. At a subsequent time the defendant said that that affair at Sterling had been done. Afterwards, in another conversation with the same witness, the defendant made admissions tending to show that the defendant desired the witness to take the horse back and claim the reward, and he (the witness) should have half of it informing him that Davenport had offered twenty-five dollars reward.

" There was also evidence tending to show that on the night of October 24, 1867, Davenport's horse escaped, or was taken by some one, through the gateway to the defendant's mowing, to the road and thence away ; and that in a few days Davenport offered the reward of twenty-five dollars for the return of the horse, and a few days later sold the horse to Jonathan Mixter, on the ' run,' at a reduced price ; that, in three or four days after the sale, the defendant, in company with Mixter, attended an auction in Hubbardston, about fifteen miles distant ; that the defendant, at the auction, made admissions to the same witness, tending to show that Mixter had bought the horse on the ' run,' at a reduced price, and that he would take it home with him that night ; that he (Mixter) did not know how the defendant came by it. There was other evidence tending to show that Mixter obtained information where the horse was, and took it home that night, but not in company with the defendant, the government claiming that Mixter secured the horse by information given by the defendant or by his procurement. There was no evidence that the defendant received any compensation from Mixter, or participated in said sale otherwise than as above stated.

" The defendant, in order to impeach the principal witness, who testified to the conversation above stated, desired to ask him, on cross-examination, the following questions : Have you

not offered, in a former and another case, to suborn a witness? Have you not forged the name of the defendant and Francis D. Willard to certain notes? These questions were objected to by the district attorney, and were not allowed to be put, by the judge; to which the defendant excepted.

"The defendant requested the judge to instruct the jury as follows: 'There is no evidence that the defendant participated in, or at the time knew of, the contract of sale of the horse by Joseph H. Davenport to Jonathan Mixter; and it should not be considered by the jury in relation to the guilt or innocence of the defendant.' This instruction the judge gave with the following addition: 'Unless the jury are satisfied from all the evidence in the case that the defendant was acting in concert with Mixter.' To this addition the defendant excepted.

"The defendant further requested the judge to instruct the jury as follows: 'That if the defendant took the property when found trespassing upon his premises, with the intent of inducing the owner to offer a reward, and then return the property and claim the reward, and not to deprive the owner wholly of it, then it would not be larceny; also, that if the defendant took the property when found trespassing upon his premises, with the intent of inducing the owner to part with his interest in his property at a price below its value, and not to deprive him wholly of it, it is not larceny.'

"These instructions the judge declined to give, but instructed the jury as follows: First. If the horse was wilfully taken away by the defendant for the purpose of retaining and concealing it until the owner should offer a reward, and then of returning it to the owner and receiving the reward, such taking would be larcenous; and this, even if the horse, when so taken away, was trespassing on the defendant's premises. Second. If so taken for the purpose of purchasing it from the owner at a less price while 'running,' the horse being retained and concealed until such purchase could be effected, such taking would be larcenous; and this, even if, when so taken away, the horse was trespassing on the defendant's premises. To the instructions thus given the defendant excepted."

*G. F. Hoar & W. A. Williams*, for the defendant.

*C. Allen*, Attorney General, for the Commonwealth.

MORTON, J.   This is an indictment for larceny of a horse.   At the trial, there was evidence tending to show that the defendant took the horse while trespassing upon his premises, with the intent to conceal it until the owner should offer a reward, and then to return it and claim the reward, or until the owner should be induced to sell it to him for a less price than its value.

The defendant requested the court to instruct the jury "that if the defendant took the property when found trespassing upon his premises, with the intent to induce the owner to offer a reward, and then return the property and claim the reward, and not to deprive the owner wholly of it, then it would not be larceny; also, that if the defendant took the property when found trespassing upon his premises, with the intent to induce the owner to part with his interest in his property at a price below its value, and not to deprive him wholly of it, it is not larceny."

The court declined to give these instructions, but in substance instructed the jury, that if the defendant wilfully took the horse while trespassing upon his premises, either with the intent of concealing and retaining it until the owner should offer a reward, and then of returning it and receiving the reward, or with the intent of purchasing it from the owner at a price less than its value, and of concealing and retaining it until such purchase could be effected, such taking would be larceny.

We are of opinion that this ruling was correct.   The fact that the horse was trespassing upon the defendant's premises is immaterial, if at the time of the taking the defendant had the felonious intent necessary to constitute larceny.   2 East P. C. 659.

The question raised in this case has never been directly adjudged by this court.   In *Commonwealth v. Tuckerman*, 10 Gray, 173, it was held that an indictment for embezzlement of money might be sustained, although the defendant had, at the time of the fraudulent conversion, the intent to restore the amount converted to the owner, and had property sufficient to secure its restoration.   This decision is not conclusive of the case at bar, because, as the property embezzled was money, the act of

conversion put it out of the control of the defendant, so that he could not return the specific property, and the necessary inference from the act was, that he had the intent to deprive the owner wholly of his property, though accompanied by an intent to make restitution at a future time. But we think that the principle extends to a case like the present, and that when a person takes property of another with the intent to deprive the owner of a portion of the property taken or of its value, such intent is felonious and the taking is larceny.

It may be difficult to reconcile all the decisions in England and this country, upon the question as to what intent makes a taking larceny, when the intent is not to deprive the owner wholly of his property.

In *Rex* v. *Phillips*, 2 East P. C. 662, the jury found that the defendants took the horses with the intent merely to ride them to Lechlade and to leave them there, and that they had no intent to return for them or to make any further use of them, and it was held to be a trespass and not larceny. There the intent was not to deprive the owner of his property in whole or in part, but merely to convert its use. The same point was decided in *Rex* v. *Crump*, 1 C. & P. 658.

In *Rex* v. *Dickinson*, Russ. & Ry. 420, the defendant took some articles of clothing belonging to a girl and carried them to a hay mow, where he had previously had unlawful connection with her, with the intent to induce her to come for them, in order that he might have opportunity for repeating the connection. It was held not to be larceny. Here was clearly no intent to deprive the owner of her property or any part of it.

In *Regina* v. *Holloway*, 2 C. & K. 942, and 1 Denison, 370, the defendant was indicted for stealing some dressed skins of leather; the jury returned a special verdict, " that the prisoner took the skins not with intent to sell or dispose of them, but to bring them in and charge them as his own work and to get paid by his master for them." The court held that it was not larceny. The skins had been dressed by another workman, and the purpose of the defendant was to cheat his master by obtaining pay for dressing them, and not to deprive him of the skins or their

value. It may be remarked that in the subsequent case of *Regina* v. *Poole*, Dearsly & Bell, 345, the same question arose, and the court of criminal appeal somewhat reluctantly followed the authority of *Regina* v. *Holloway*, Crompton, J., intimating that if it was a new question he should be inclined to hold differently.

We think these cases are distinguishable from the case at bar. The jury must have found, under the instructions given them in this case, that the defendant took the horse with the intent to conceal and retain it until he could obtain a reward from the owner, or until he could effect a purchase from him at a price less than its real value. The intent, in either contingency, was to deprive the owner of, and appropriate to his own use, a portion of the value of the property. We are of opinion that upon principle, and the weight of the authorities, the taking with such intent was larceny.

In *The Queen* v. *Hall*, 1 Denison, 381, the defendant took a quantity of tallow from his master, intending to sell it again to his master, and it was held to be larceny.

In *Regina* v. *Manning*, Dearsly, 21, and 14 Eng. Law & Eq. 548, the defendant clandestinely took a quantity of bags from his master's warehouse, and placed them outside by the door, with the intent that an accomplice should receive pay for them as new bags furnished by him to the master; and it was held to be larceny.

In *Regina* v. *O'Donnell*, 7 Cox C. C. 337, the indictment was for feloniously taking a reward for restoring stolen property, being a mare. The chief justice of the common pleas ruled that " if the defendant had got some person to take away the mare, with the intent of obliging the owner to pay a sum of money for the return of the mare, which in fact he knew he had no claim for, that was a felonious stealing of the mare ; " and the court of criminal appeal held that the ruling was correct.

The other exceptions taken by the defendant cannot be sustained. The questions put to the government witness in cross-examination, whether he had not offered in another case to suborn a witness, and whether he had not forged the name of the defendant and Francis D. Willard to certain notes, were inquiries

as to matters collateral and irrelevant, and the ruling of the presiding judge rejecting them is not open to exception. *Smith* v. *Castles*, 1 Gray, 108.

The defendant asked the court to instruct the jury, that there was no evidence that the defendant participated in or knew of the contract of sale of the horse to Mixter; the court gave the instruction with the addition "unless the jury are satisfied from all the evidence in the case that the defendant was acting in concert with Mixter." This instruction was sufficiently favorable to the defendant. The facts, that the defendant stole the horse, that Mixter soon after bought him at a small price, that Mixter and the defendant were shortly after together under the circumstances stated in the bill of exceptions, and that Mixter, after his purchase, at once and without difficulty, obtained possession of the horse, had some tendency to show that the two were acting in concert. Of its weight we are not to judge; but it was sufficient to go to the jury, and justified the ruling excepted to.

*Exceptions overruled.*