Boynton, J.
The court instructed the jury, in substance, that where the property of another is wrongfully taken and carried away, without his consent, the law presumes the taker intends to convert the property taken to his own use, and to deprive the owner of it; and that, such facts appearing, the duty devolves on the accused to rebut such presumption, by proof of another and rightful purpose, or intent, in such taking.
*224 We think this instruction was wrong. To constitute larceny, the taking must be with felonious intent. A wrongful taking and carrying away of the property of another without his assent, may, or may not, constitute larceny.
By the act of May 15,1868 (S. & S. 279), the wrongful taking of a horse, or gelding, the property of another, without his consent, with intent to injure, set at large, or use, or to enable another to injure, set at large, or wrongfully use, constitutes a misdemeanor. A wrongful taking, and non-consent of the owner, are necessary ingredients in the offense thus defined, as in larceny.
The same elements also enter into a simple trespass to personal property.
If a presumption of an intent to convert the property and to deprive the owner of all dominion over it, arises from the circumstance-of a wrongful taking without the consent of the owner, and the presumption can be overthrown only by showing that the act sprung from a rightful purpose or intent, it would be extremely difficult for one charged with stealing a horse where the wrongful taking and non-consent of the owner were established, to show that his purpose in taking the animal, was only to employ the same in some temporary service, or to set the same at large. A rightful purpose is an honest purpose. "Where several inferences deducible from the facts which appear, are equally consistent with all the facts, one of them can not be said to be established, to the exclusion of the others. In the circumstances of the case the intent with which the act of taking the property was committed, was a question for the jury. Proffatt on Jury Trials, § 265. 2 Whart. Ev., § 1261.
It is, however, established by repeated adjudications, that a general exception to the instructions of the court to the jury, consisting of a series of propositions, does not entitle the excepting party to a reversal of the judgment because some single proposition may be wrong. Adams v. The State, 25 Ohio St. 584; Marietta & Cincinnati R. R. Co. v. Strader, *225 29 Ohio St. 448; Adams v. The State, 29 Ohio St. 412; Serviss v. Stockstill, 80 Ohio St. 418. Such was the character of the exception here.
It is also well settled that a judgment will not be reversed for an erroneous ruling or instruction, where it clearly appears from the whole record, that it did not prejudice the' rights of the party objecting thereto, although an exception was properly taken to the erroneous ruling, at the time it was made.- Banning v. Banning, 12 Ohio St. 437; Fuller v. Coats, 18 Ohio St. 343.
But where it is assigned for error, that the court improperly refused to grant a new trial upon the ground that the verdict was against the law and the evidence, and a bill of ¿xceptions embodying the charge and all the evidence adduced upon the trial is made a part of the record, the court, in determining whether a new trial ought to have been granted, will examine the charge as well as the evidence, whether excepted to or not, with a view to determine whether, under all the circumstances, substantial justice.requires a new trial to be granted. Marrietta & Cincinnati R. R. Co. v. Strader, supra.
In view of these settled principles, the questions arising' upon the record resolve themselves into two. 1. Did the court err in refusing to give to the jury the instructions prayed for ? 2. Does it fairly appear from the facts established by the evidence, in connection with the instructions actually given, that the coui’t erred in refusing a new trial ? If there was no error in refusing to charge as requested, and no injustice has been done to the accused in view of the whole case, a new trial was properly denied.
That the two geldings were wrongfully taken from the owner, -without- his consent-, concealed and secreted in the woods some three miles distant, for the purpose of securing a reward which the parties to the transaction expected would be offered for their return; and that the result contemplated was accomplished by their return and a receipt of the reward, in the meantime offered, are facts clearly proved. They are almost a necessary result of the verdict., *226 The claim of the plaintiff in error was, and his position now is, not that such taking with such intent was not shown, but that such taking with such intent was not larceny or horse stealing, under the statute. If mistaken iu this, if the intent thus disclosed in connection with the acts committed, constitutes, in law, the crime of larceny, it is entirely immaterial whether the instructions of the court as to the legal effect of certain established facts upon the question of intent were correct or not. This leads us to inquire iuto the correctness of the instructions given, and those requested and refused, in view of the facts developed at the trial. The statute declares, “that if any person shall steal any . . . gelding ... of any value, . . . every person so offending shall be deemed guilty ■of a misdemeanor. Having no statutory definition of the ■word “steal,” we must gather its import and meaning from the common law.
The substantial difference between the instruction given to the jury, and the one requested and refused, may be stated in a few words. The court held, in effect, and so .advised the jury, that if the geldings were-wrongfully taken without the consent of the owner, with intent to conceal and secrete them, until a reward was offered for their return, and for the purpose of obtaining such reward, such taking was larceny. The request refused, embodied the ■converse of this proposition. We think the instruction was right. It is not easy to reconcile the various definitions of larceny given by text writers, and the authorities. See 2 Bish. Cr. L., § 758, note. In 2 East’s Crown Lawr, 558, it is defined to be, “the wrongful or fraudulent taking and ■carrying away, by any person, of the mere personal goods ■of another, from any place, with a felonious intent to convert them to his (the taker’s) own use, and make them his •own property, without the consent of the owner.” Mr. Baron Parke, in commenting on this definition, held it incomnlete in not defining the meaning of the term “felonious,” and declared the taking must be, not only wrongful and fraudulent, but also “ without color of right,” and that *227 u there must be an intention to deprive the owner wholly of his property.” Regina v. Holloway, 1 Den. C. C. 337.
The contention of the plaintiff is, that the facts established at the trial did not bring the case within the rule thus stated, inasmuch as there was no intention to deprive the owner wholly or permanently of his property. In an exact sense, it is not true that an intent to appropriate permanently the property taken is a necessary ingredient in the crime of larceny, if by permanent appropriation is meant keeping the specific property from the possession of the owner. If A. wrongfully takes from B., without his consent, a bushel of wheat, and returns and sells it to B., no one will contend that the fact that the wheat was thus returned, and intended to be so returned when .taken, re-> lieves the act of taking of its felonious character. In such case, the offense of larceny would be as complete -as if the wheat had been sold to a stranger. So, if the geldings taken in the case at bar, had been disguised, returned and sold to the owner in pursuance of a purpose formed when they were taken, that the transaction would have constituted larceny can not be doubted. Yet, in respect to the fraudulent character of the transaction, or in point of moral obliquity, it would be difficult to distinguish it from the case here made. The ouly possible difference in the two cases is, that in the one there would be an intent to convert the whole value of the property, and in the other only a part. But in this case there was an utter absence of intention to restore the property unless money was paid for its restoration. There wTas no evidence tending to show a purpose to return the property unless a reward was offered therefor. A return, at all events, was not designed. It is true, that all parties concerned in the taking contemplated and expected that the owner would offer such reward ; but the purpose to return was founded wholly on the contingency that a reward would be offered, and unless the contingency happened the convei'sion was complete. Whether an intent to return at some remote period of time,-in case no reward was offered, would have reduced the transaction *228 to a lesser offense, we have not considered. See note to Reg. v. Holloway, above cited. In Regina v. Spurgeon, 2 Cox, C. C. 102, where property was temporarily deposited by the owner in a public room, and was taken away by the prisoner for the purpose of exacting a reward for its restoration, the jury being of the Opinion that he would not have restored it without such reward, it was held to be larceny.
In Reg. v. O’Donnell, 7 Cox, C. C. 337, it was held, that if property be taken'with the intention of holding it until the rightful owner should pay a certain sum, and obliging such payment, the offense of larceny was complete.
In The Queen v. Hall, 5 British Crown Cases, 389, the prisoner took a quantity of fat from A., removed it to another room, and in a short time offered to sell it to A. as the fat of one Robinson, a butcher. It was held that he was guilty of larceny. Regina v. Manning, 1 Dearsly’s C. C. 21, is to the saíne effect. See also Regina v. Gardner, 9 Cox, C. C. 253.
In Regina v. Peters, 1 Car. & Kir. 245, it was held, that if a person drop a chattel, and another find it and take it. away with intention to appropriate it to his own use, and only restores it because a reward is offered, he is guilty of larceny.
In Commonwealth v. Mason, 105 Mass. 163, it was held, that taking a horse while trespassing upon the taker’s premises, with intent to conceal it until the owner should offer a reward for its return, and then to return it and claim the reward, or with intent to induce the owner to sell it astray for less than its value, is larceny. Morton, J., said : “ We think that when a person takes property of another, with the intent to deprive the owner of a portion of the property taken, or of its value, such intent is felonious and. the taking is larceny.” And again : “ The jury must have found, under the instructions given them, that the defendant took, the horse with intent to conceal and retain it until he could obtain a reward from the owner, or until he could effect a purchase from him at a price less than its real *229 value. Tlie intent, in either contingency, was to deprive the owner of, and appropriate to his own use, a portion of the value of the property. We are of opinion that, upon principle and the weight of the authorities, the taking with such intent was larceny.” .
Mr. Bishop, in 2 Crim. Law, section 841 (a),says: “ The doctrine seems to be, both in principle and authority, that if the intent is not ¿o deprive the owner of the whole thing but of a part of it, or a part interest in it, the transaction will be larceny.” See also 2 Whar. Cr. Law, § 1781 et seq.
Regina v. Holloway, so much relied on by plaintiff’s counsel, was this. The prisoner was indicted for stealing some ■dressed skins of leather. A special verdict was returned, showing that “ the prisoner took the skins, not with intent to sell or dispose of them, but to bring them in and charge them as his own work and to get paid by his master for them.” The skins had been dressed by another workman and not by the prisoner. It was held not to be larceny.
In the case of Regina v. Poole, 1 Dearsley & Bell’s C. C. 847, similar in principle to Regina v. Holloway. Compton, J., referring to the latter case, said: “I confess I am not so clear as to the principle of that decision. If this had been the first time the point had been raised, I should have been inclined to think that there was sufficient here to make out the lucri causd.” Whether this criticism is just or not, that case is clearly distinguishable from the present.
The remaining questions are not of sufficient importance to require extended comment. The court instructed the jury, that if Berry “ advised, or hired, or incited, or commanded, or procured, or counselled, or requested the commission of the principal crime charged,” he was guilty of the offense charged' against' him. The defendant excepts to the use of the word “ requested ” in describing the offense. The statute makes it a felony for any person “ to *230 aid, abet, or procure ” another to commit larceny. (S. & S. 266, § 14.) It is fairly to be implied, that by the use of the language “ requested the commission of the principal crime charged,” taken in connection with the whole charge, the court meant, and were so understood, a “ request ” that was effective in influencing or causing the, commission of the larceny.
It is also insisted that the court erred in stating to the jury, that there was testimony in the case tending to support or corroborate Molosh, although its weight was left to the jury. It is clear the court did not err.
"Whether evidence tends to establish a fact is a question of law. "Whether it does establish it, is a question of fact.
Nor was there any error in requiring Berry to answer the question put to him, involving the -purpose to which the one hundred dollars were to be applied, that he sent through Betts to Kelly, his attorney. His statement was that Kelly was going to use it—not to hire a witness to absent himself from the trial—but for what purpose he did did not know. Kelly “ was to use it as he saw fit.”
The testimony was competent as tending to show the money was designed for an improper use in connection with the trial; and it was discretionary with the court, in furtherance of justice, to allow it at any stage of the trial. Graham v. Davis, 4 Ohio St. 362; King v. Barrett, 11 Ohio St. 261. The testimony of Geiser in contradiction of Lace was also-properly received. Duncan, a witness for the State, had denied, while on the witness stand, that he told Lace that “ if he (Duncan) got into trouble, and Berry would n’t help him, he would put up a job on him.” Lace testified that Duncan so stated. Upon cross-examination he was asked, in substance, time and place being named, if in stating to Geiser all Duncan had said, he did not omit the above threat. This he denied. Geiser was permitted to state that in such conversation he omitted all reference to a threat. This testimony tended directly to impair the credibility of the statement of Lace, contradictory of the testi *231 mony of Duncan. It was not too remote to be material Powers v. Leach, 26 Vt. 270.
We have carefully examined all tbe evidence embodied in the bill of exceptions, and are satisfied that the court did not err in regarding it sufficient to support the verdict.

Judgment affirmed.