### JACOB CROCKFORD V. STATE OF NEBRASKA.

FILED JANUARY 5, 1905. No. 13,792.

1. **Statute: LOCAL CUSTOM.** A local custom cannot operate to suspend a criminal statute, nor to overthrow the rules of evidence by which the commission of an offense is proved.

2. **Cattle Stealing.** Where one not the owner takes into his possession a calf found running at large as an estray, and at the time takes it with the intent to convert it to his own use, and to permanently deprive the owner of his property without his consent, such a taking would constitute the crime of cattle stealing as defined in the criminal code.

2a. **Instructions** defining the crime of cattle stealing as copied in the opinion, where the taking is of an animal running at large, *held* properly given.

3. **Evidence** examined, and *held* sufficient to sustain a verdict of guilty.

ERROR to the district court for McPherson county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Beeler & Muldoon,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* contra.

HOLCOMB, C. J.

The defendant was found guilty of the larceny of a calf alleged to be of the value of $10 but which the jury found to be worth only $5. Upon the rendition of the verdict of

4

guilty, the court sentenced the accused to imprisonment in the penitentiary for the period of one year. The alleged larceny was committed in McPherson county, where grazing and stock raising is the principal industry. The accused, while admitting that he obtained possession of the calf, testified that it came an orphan and in a half-starved condition to the premises where he was employed, and that as an act of kindness he placed it in an inclosure and cared for it as an estray, without any intent to steal.

1. It is urged upon us that the trial court committed prejudicial error in not permitting the defendant to prove a custom, claimed to exist in the locality where the offense was charged to have been committed, to the effect: "That any one finding a calf either upon the prairie, or upon his range, or upon his premises, that is lost from its mother, and in a starving or half-starved condition, to take up the calf and feed it and save its life if possible. That, unless the owner or any person claiming to be the owner comes and brings a cow to the place where the calf is, and that, unless the cow owns the calf and the calf the cow, it becomes the property of the taker up." We are not without scriptural authority for saying that the ox knoweth his owner and the ass his master's crib, and it would not seem unreasonable to conclude that the recognition by a cow of her offspring, especially before weaning time, ought to be of some probative value in determining the ownership of the calf. The real point of difference, however, in the case at bar, seems to hinge on the question of whether the cow should be taken to the calf, or the calf to the cow, for it is in evidence that when they were brought together the action of the older animal evidenced her maternal affection for her lost offspring, or, if not, that it is manifest that she was quite willing to become the foster mother of the orphan calf. Whatever may be the force of the alleged custom, if proved, as to the respective rights of those taking up and holding estrays and those claiming to be the owners, we do not find warrant in law or precedent for holding that such a custom, if existing, could operate to

suspend a criminal statute, or to overthrow the rules of evidence by which the commission of an offense is proved. The point at issue is whether the accused took the calf in controversy with the intent to steal the same, and thus to convert it to his own use against the owner's consent and thereby permanently deprive him of his property; and not whether he refused to surrender the possession of an estray to one claiming to be the owner thereof. Whether the calf was or was not an estray at the time of the commission of the alleged offense is not of itself of vital importance. In either event it was property subject to be taken with intent to steal.

2. The following instructions are complained of:

"9th. The jury are further instructed that if you believe from the evidence beyond a reasonable doubt that the defendant took the calf mentioned in the information into his possession, or found it running with his stock, or with stock that was in his care or under his charge, and that at the time he so took it or found it he knew it was not his own, and that he then and there intended to steal and convert the calf to his own use, and to deprive the owner of the calf, whoever he might be, and at the time took possession of the calf in question and held such possession with such intention, this would amount to the crime of larceny, provided you further find all the other material allegations of the information are proved by the evidence beyond a reasonable doubt.

"10th. You are instructed that if you find from the evidence in this case that the calf described in the information was an estray, and that the defendant took it into his possession, or found it running with stock that was in his care, and took care of it and fed it with his stock or with other stock that was in his care, and that when he first took possession of the calf or discovered it with his stock that was in his care he did not intend to steal it or feloniously convert it to his own use, then he would not be guilty of larceny or receiving stolen property, although you find from the evidence beyond a reasonable doubt that he after-

wards converted it to his own use with intent to deprive the owner of it."

These instructions are approved in *Lamb v. State*, 40 Neb. 312, and were pertinent to the issues raised in the present case and to the evidence introduced in support of the charge made against the accused. There was really but one question for the jury to determine and that was whether, when the accused took the calf, alleged to have been stolen, into his possession, he did so with the felonious intent to steal it; and these two instructions fairly submitted that issue to the jury as a question of fact which it was its province to pass upon.

3. It is argued that, aside from the confessions of the accused, there is no evidence to prove the *corpus delicti*, that is, that a larceny had been committed. There are other facts and circumstances in the record justifying the conclusion that the animal was stolen as alleged in the complaint, which, with the confession of the defendant offered in evidence, renders the evidence sufficient to support the verdict of guilty. We find no sufficient cause for reversing the judgment of the trial court, and the same is accordingly

AFFIRMED.