## G. C. LOVEJOY V. STATE OF NEBRASKA.

### FILED JANUARY 10, 1936. No. 29510.

*Cordeal, Colfer & Russell,* for plaintiff in error.

*William H. Wright, Attorney General,* and *Milton C. Murphy, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

The plaintiff in error, hereinafter referred to as the defendant, was charged in the district court on seven

separate counts charging him with buying and receiving stolen chickens, "well knowing the said chickens aforesaid, to have been stolen." On trial, he was found guilty on five of the counts referred to, and was sentenced to imprisonment in the county jail of Red Willow county, Nebraska, for the period of 50 days on each of the counts on which he was found guilty, said sentences to run concurrently. From the order of the trial court overruling his motion for a new trial, he prosecutes error.

The charges contained in the information were laid under section 28-524, Comp. St. 1929. The crime here presented is defined in that section as, "whoever * * * receives or buys any chickens * * * that shall have been stolen, knowing the same to have been stolen, with intent, by such receiving or buying, to defraud the owner; * * * shall for the first offense be imprisoned in the county jail," etc. This language defines an independent statutory crime. Substantially identical language, as applied to cattle, has been construed by this court in the following words: "The buying or receiving of cattle knowing them to have been stolen is, by statute in this state, made an independent substantive crime, hence it is not essential in an indictment therefor that the name of the original thief be alleged." *Ream v. State,* 52 Neb. 727, 73 N. W. 227.

*Ream v. State, supra,* followed *Levi v. State,* 14 Neb. 1, 14 N. W. 543, wherein the rule was announced: "In this state the receiving or buying of stolen goods, with intent to defraud the owner, is not an accessory, but a substantive offense, and a conviction may be had without regard to the person who stole the goods, or from whom they were received." Both the *Ream* and the *Levi* cases were cited and approved in the case of *In re Loomis,* 84 Neb. 493, 121 N. W. 456.

The accused bases his first challenge on the alleged general insufficiency of the evidence to sustain his conviction. His contention is that, when, in a prosecution for receiving or buying stolen property, it appears that the defendant had kept records of purchases as required by

law, and that he paid the full price for the property, and the only evidence supporting a verdict of guilty was the testimony of the persons who admitted they had stolen the property, a conviction should not be sustained.

Conceding that the facts thus emphasized may form a strong foundation for a potent appeal to the triers of fact on behalf of the accused, this jurisdiction was early committed to the view that accomplices are competent witnesses for the state in criminal trials. *Carroll v. State*, 5 Neb. 31.

As to the weight which is to be accorded to the testimony of an accomplice, we are likewise committed to the view that "A conviction may rest on the uncorroborated evidence of an accomplice, when, considered with all the testimony, it satisfies the jury beyond a reasonable doubt of the guilt of the accused." *Lamb v. State*, 40 Neb. 312, 58 N. W. 963. See, also, *Olive v. State*, 11 Neb. 1, 7 N. W. 444; *Lawhead v. State*, 46 Neb. 607, 65 N. W. 779; *Bartlett v. State*, 115 Neb. 148, 211 N. W. 994; *Hutter v. State*, 105 Neb. 601, 181 N. W. 552; *Cockeram v. State*, 121 Neb. 757, 238 N. W. 524; *Barnes v. State*, 124 Neb. 826, 248 N. W. 381.

In *Jahnke v. State*, 68 Neb. 181, 104 N. W. 154, we find practically the only instance in this jurisdiction of an exception or qualification of the rule just quoted. Under the facts disclosed by the record in that case, the majority opinion of the court, on rehearing (Holcomb, C. J., dissenting), announced its determination that "The evidence of an accomplice should be closely scrutinized. If it appears that such witness has wilfully sworn falsely in regard to a material matter upon the trial, his evidence cannot be sufficient, if uncorroborated, to support a verdict of guilty."

A careful reading of the entire record in the instant case discloses that it contains no evidence from which the conclusion may be properly drawn that any of the witnesses for the state has "wilfully sworn falsely in regard to a material matter upon the trial." Rather, the situation here presented is aptly described in the language of Rose, J., in *Cockeram v. State, supra,* viz.: "The credibility of the wit-

nesses was a question for the jury, and they believed the story of the accomplices, which is not incredible or unbelievable or physically impossible."

The defendant contends that, in the present case, to sustain a conviction it is essential that the state prove the ownership of the property involved, and that such owner's evidence as to his lack of consent to the taking of the property is required unless it is shown that the owner's testimony is not obtainable.

It is axiomatic in criminal procedure that "Ownership of chattels may, in an indictment for their theft, be laid either in the owner, or in the person who at the time of the theft was in the actual peaceable possession of them, although such person may have no other property therein than the right of possession as against the thief." 36 C. J. 832. See, also, *Martin v. State,* 78 Neb. 826, 112 N. W. 285; *Sharp v. State,* 61 Neb. 187, 85 N. W. 38; *Clark v. State,* 102 Neb. 728, 169 N. W. 271.

While the owners of the stolen property did not appear as witnesses in this case, the evidence of others in the record, if believed, amply establishes, in addition to other circumstances, that the persons charged as the thieves went to the premises then occupied by the persons alleged to be the owners of the chickens in suit, and removed therefrom and from the buildings situated thereon certain chickens, in the absence of such owners, and without their knowledge or consent; that the chickens so secured were immediately taken to the place of business of the accused, and were delivered to and purchased by him, under such circumstances as brought knowledge home to him that these chickens had been stolen. The accomplices who testified, expressly and by necessary implication, disclosed that they were not the owners of the property taken; that they asserted no claim of right thereto, notwithstanding they made an unauthorized sale of such property and appropriated the proceeds to their own use.

It is true that in *Bubster v. State,* 33 Neb. 663, 50 N. W. 953, the rule was announced, viz.: "In a prosecution for

larceny, the owner of the property ordinarily must be called as a witness to prove the nonconsent to the taking of the property." And in *Perry v. State,* 44 Neb. 414, 63 N. W. 26, the principle was laid down, viz.: "In a prosecution for larceny, if the owner of the property alleged to have been stolen is examined as a witness upon the trial, his testimony that he did not consent to the taking of the property is indispensable to a conviction." However, in the instant case, none of the owners of the chickens stolen appeared as witnesses or were called by the state to testify to their nonconsent.

In *Rema v. State,* 52 Neb. 375, 72 N. W. 474, which involved the subject here for consideration, Norval, J., says, in part: "Applying this rule to the facts in the case in hand, are they sufficient to show that no consent was obtained to the taking of the property? If we are able to comprehend the effect and force of the testimony, the answer must be that there was an entire lack of consent, although no witness in express terms so stated at the trial. It is disclosed by the uncontradicted testimony of several persons that the cow charged to have been stolen, and many others belonging to the Equitable Farm and Stock Improvement Company, were at the time in the immediate and exclusive possession and control of Edward Richards and Henry Chestnut, the foreman and agent, respectively, of said corporation; that on the day preceding the night of the alleged larceny both of them were apprised that some of the cattle of the corporation in their care were going to be stolen; that Chestnut and Richards, together with Sheriff Camp and one Harding, watched the pastures in which the cattle were kept the following night, and saw the defendant enter the pasture between ten and twelve o'clock of that night and with much haste drive therefrom the cow in dispute and several others; that they followed rapidly on horseback a distance of ten or twelve miles, and saw the defendant drive the cow into a ravine or 'blow out,' as called by some of the witnesses, and caught the accused in the very act of skinning the animal and thereupon arrested

him for the theft. Thus it was shown by the persons in whose immediate possession the property was that the same was taken without their authority, permission, or consent."

In the later case of *Van Syoc v. State*, 69 Neb. 520, 96 N. W. 266, this court announced the rule: "The fact that property alleged to have been stolen was taken without the consent of the owner may be inferred from circumstances shown in evidence as well as by direct testimony that none was given."

And, in *Palmer v. State*, 70 Neb. 136, 97 N. W. 235, we again distinctly announced the rule: "In prosecutions for larceny, nonconsent of the owner of the property alleged to have been stolen may, in a proper case, be inferred from circumstances." In discussing this principle, in the opinion in such *Palmer* case, Sullivan, C. J., says: "The first assignment of error discussed by counsel is based upon the failure of the state to show by direct evidence that the stolen steer was taken by defendant without the owner's consent. The owner was not a witness and had, it would seem, no personal knowledge of the means by which he was deprived of his property. That he did not consent to the taking is a warrantable inference from the evidence. Indeed, no other inference is warrantable. Want of consent in prosecutions for larceny may be inferred from circumstances. Direct proof is not indispensable. *Wiegrefe v. State*, 66 Neb. 23, 92 N. W. 161."

The facts of the instant case bring it fairly within the rule announced in *Palmer v. State, supra,* and defendant's contention to the contrary may not be sustained.

The correctness of the trial court's instructions to the jury relating to the testimony of an accomplice is challenged, and its refusal to give instruction No. 3 as requested by the defendant is assigned as error. This court is committed to the view that "One who steals personal property and sells it to another may, under a proper state of facts, be considered an accomplice of the buyer of the stolen property." *Neiden v. State*, 120 Neb. 619, 234 N. W. 563.

Under the facts in the instant case, the rule above quoted requires that the trial jury be instructed on the subject of evidence of accomplices. But, in the *Neiden* case, the trial court gave no instruction whatever on the subject of the testimony of accomplices, and the conviction was reversed because the record was "held to require an instruction on the subject of accomplices." Indeed, the paragraph of the opinion in the *Neiden* case devoted to this subject concludes with the sentence, "In such a situation, even if the exact and entire form (of the instruction requested by defendant) was objectionable, it was the duty of the court to give a proper instruction upon the subject." But, in the instant case, an instruction on this subject was given by the trial court, in the following language:

"The fact that several of the witnesses who have testified on behalf of the state are shown by the testimony to be accomplices does not make them incompetent as witnesses. The turpitude of their conduct does not disqualify them from testifying. The admission of an accomplice as a witness is said to be justified by the necessity in a case, and with the wisdom of the practice you are not concerned. The degree of credit which ought to be given to the testimony of a witness who is an accomplice is a matter exclusively within your province to determine. Greater caution in weighing such testimony is dictated by prudence and sound reason. You may, under the law, if you see fit, act upon the testimony of an accomplice or accomplices, and if satisfied, beyond a reasonable doubt, from it and all the other evidence in the case, that the defendant is guilty as charged in one or more of all of the counts of the information, then you should so find."

Instruction No. 3, as requested by the defendant, was as follows:

"In this case the witnesses who testified that they sold chickens to the defendant are accomplices to the crime charged in this case. While it is a rule of law that a person accused of crime may be convicted upon the testimony of an accomplice or accomplices, still you should act upon such

16

161

testimony with great care and caution, and subject it to careful examination, in the light of all the other evidence in the case, and you ought not convict the defendant on such testimony alone, unless, after a careful examination of such testimony, you are satisfied beyond a reasonable doubt of its truth, and that you can safely rely upon it."

A careful comparison of the instruction given with the instruction here refused, it is thought, discloses that as given by the trial court every essential element contained in the instruction requested is included. The principal difference is that in one the ideas are couched in the affirmative, and in the other expressed in the negative. But, under the terms of the trial court's instruction, all matters properly for consideration in connection with the testimony of accomplices was necessarily and substantially presented for the consideration of the jury. The defendant suffered no prejudice from this mere difference of form of expression. It will be remembered, in this connection, that in *Dyson v. State,* 107 Neb. 774, 186 N. W. 984, the instruction substantially as given in the instant case was under consideration by this court, and the paragraph containing the discussion thereof closes as follows: "The rule embodied in the instruction is in accord with the former holdings of this court, and with the general rule. *Lamb v. State,* 40 Neb. 312, 58 N. W. 963; *State v. Sneff,* 22 Neb. 481, 35 N. W. 219; 16 C. J. 605, sec. 1422; Randall's Instruction to Juries, sec. 21." It is deemed that the language quoted states the correct conclusion.

Even if the conclusion here announced and the refusal of the trial court to give the requested instruction involve a technical error, the case then presented would plainly be within the purview of the statutory injunction that "No judgment shall be set aside, or new trial granted, * * * in a criminal case on the grounds of misdirection of the jury, * * * if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." Comp. St. 1929, sec. 29-2308.

It follows that no substantial error has been committed by the trial court, and its judgment and sentence imposed are

AFFIRMED.